UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM SHANE SHEEHAN                                                   PETITIONER

v.                                                     CIVIL ACTION NO. 3:11-CV-00478

CLARK TAYLOR, Warden                                                    RESPONDENT

**MEMORANDUM OPINION**

*Pro se* Petitioner William Shane Sheehan seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 following his state conviction and sentence on charges of: Wanton Endangerment I (five years); two counts of Violating a Protective Order (twelve months each); Assault IV (twelve months); Criminal Mischief III (twelve months); Assault I (twenty years enhanced to twenty-five by reason of Persistent Felony Offender I enhancement); Burglary I (twenty years enhanced to twenty-five by reason of Persistent Felony Offender I enhancement); three counts of Wanton Endangerment (five years each); Possession of a Firearm by a Convicted Felon (ten years); Stalking I (twelve months); and Persistent Felony Offender I. The sentences are to run concurrently, for a total term of imprisonment of twenty-five years.

**I.**

Sheehan's convictions arose from Sheehan's harassment of his ex-girlfriend, Crystal Blackford, between August 15-25, 2002.[1] The two most egregious offenses were committed on August 24th and 25th. On August 24th, Sheehan approached a car in which Crystal was a

---

[1] As explained in Part II below, the court adopts in full the factual findings of the Magistrate Judge in his report and recommendation. This part provides an abbreviated factual and procedural history for context only.

passenger, punched through the car window, and attempted to pull Crystal through the window. The driver, a co-worker of Crystal's named Jimbo, drove off, but Sheehan followed behind in a car and attempted to force them off the road. Eventually, Jimbo and Crystal managed to flag down a sheriff's deputy to report the incident. Then, on the night of August 25th, Crystal was in the living room at her sister's home, when Crystal "felt something" and looked out a sliding glass door that led to the balcony. Sheehan was standing there. Crystal ran into her sister's bedroom, where her sister and her sister's boyfriend were asleep. Sheehan, meanwhile, kicked in the front door, fired a weapon through the bedroom door, entered the room, and shot three more times at Crystal. One bullet hit Crystal and punctured her liver. After pausing for a minute and looking at Crystal, Sheehan fled.

Sheehan was indicted on a number of charges related to his conduct toward Crystal. On April 6, 2004, the day his trial was supposed to begin, Sheehan pled guilty to the charges noted above. In exchange, the Commonwealth dismissed a charge of Criminal Attempt Murder and two other misdemeanor charges and recommended that Sheehan receive a sentence of twenty-five years' imprisonment. On July 20, 2004, the court sentenced Sheehan to the recommended 25-year prison term.

On July 15, 2005, Sheehan filed a motion to vacate judgment pursuant to Rule 11.42 of the Kentucky Rules of Criminal Procedure. Sheehan argued that he received ineffective assistance of counsel because of his attorney's failure to adequately investigate a defense that Sheehan's actions were the result of a steroid-induced psychosis (the "roid rage" defense), which, Sheehan argued, would have mitigated his culpability as to the top counts of the indictment.

The Honorable Charles L. Cunningham, Jr., of the Jefferson County, Kentucky, Circuit Court, held a hearing on Sheehan's post-conviction motion. At the hearing, Sheehan called Dr. Harrison Pope, Jr., a Harvard medical professor, to testify as an expert witness on the use and abuse of anabolic steroids. The prosecution called Sheehan's appointed trial counsel, Sheila Seadler, to testify.

Thereafter, Judge Cunningham issued a 19-page order denying Sheehan's post-conviction motion. The Kentucky Court of Appeals issued an opinion affirming the denial of Sheehan's post-conviction motion. Sheehan then sought discretionary review by the Kentucky Supreme Court.

While his motion for discretionary review was pending, Sheehan filed a habeas petition in this court. In his petition, Sheehan raised his claim of ineffective assistance of counsel premised on counsel's alleged failure to adequately investigate a "roid rage" defense. Sheehan acknowledged in the petition that his discretionary review motion was still pending, but stated that he was filing his petition as a "protective petition." This court referred the case to the Honorable Dave Whalin, Magistrate Judge, for a report and recommendation on any dispositive matter.

Respondent Clark Taylor moved to dismiss the petition on the basis that Sheehan had not exhausted his state court remedies, since his motion for discretionary review was still pending at the Kentucky Supreme Court. Respondent also argued that a stay for Sheehan to exhaust his claim was unwarranted because, *inter alia*, the claim was plainly meritless. However, on December 14, 2011, prior to any decision on Respondent's motion to dismiss, the Kentucky Supreme Court denied Sheehan's motion for discretionary review. Five days after the Kentucky

Supreme Court issued that order, Sheehan refiled his habeas petition to ensure that it was properly filed. Accordingly, Respondent withdrew its argument that Sheehan had failed to exhaust his state remedies. However, Respondent continued to oppose the habeas petition on the ground that it was meritless.

On March 29, 2012, Judge Whalin issued a thorough 31-page report and recommendation on the merits of Sheehan's claim. Judge Whalin recommended that Sheehan's habeas petition be dismissed as meritless. Judge Whalin also recommended that this court deny petitioner a certificate of appealability because Sheehan has not made a substantial showing of the denial of a constitutional right.

Sheehan filed objections to Magistrate Judge Whalin's report and recommendation. He subsequently submitted two supplements to his objections. This court is required to review *de novo* those matters to which an objection has been made. 28 U.S.C. § 636(b). As will be detailed below, this court agrees with Judge Whalin that the state courts' decisions were not unreasonable; thus Sheehan's habeas petition will be dismissed. Additionally, this court will decline to issue a certificate of appealability.

## II.

As Magistrate Judge Whalin and the Kentucky Court of Appeals both noted, the Kentucky Circuit Court's opinion contained a thorough and exhaustive recitation of the facts. The Magistrate Judge, noting that Sheehan did not show the findings of the state trial court to be clearly erroneous, relied on Judge Cunningham's opinion to establish the facts set forth in the report and recommendation. In his objections to Magistrate Judge Whalin's report and recommendation, Sheehan generally states that he "objects to the magistrate Judge's Findings of

Fact" (DN 40 at 2). However, Sheehan does not specify which of the Magistrate Judge's factual findings he disagrees with.

In any event, the record in this case demonstrates that the state courts' factual findings were not clearly erroneous. Under 28 U.S.C. § 2254(e)(1), a state court's determination of a factual issue is "presumed to be correct" and it is the burden of the petitioner to rebut that presumption by "clear and convincing evidence." Accordingly, the court adopts in full the findings of fact in the Magistrate Judge's report, which, except for the abbreviated summary above, will not be repeated herein.

### III.

#### A.

Sheehan also objects to the Magistrate Judge's conclusions of law and ultimate recommendation that his petition pursuant to 28 U.S.C. § 2254 be dismissed. The court will thus review the Magistrate Judge's conclusions of law *de novo*.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), for a habeas petitioner to obtain relief upon a claim adjudicated on the merits in a state court proceeding, he or she must show that the adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Here, the Kentucky trial court found that Sheehan's ineffective assistance of counsel claim pertaining to Seadler's investigation, or lack thereof, of a "roid rage" defense failed both prongs of the *Strickland* standard. The Kentucky Court of Appeals affirmed,

finding that Sheehan had not shown Seadler to be deficient under the first prong of *Strickland*, and thus failing to address the prejudice prong. Because Sheehan's ineffective assistance of counsel claim was "adjudicated on the merits in State court proceedings," the deferential AEDPA standard applies to review of the state courts' decisions. *See* 28 U.S.C. § 2254(d).

  A state court decision is "contrary to" clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Under the "unreasonable application" prong, a federal habeas court asks whether, even if the state court identified the proper constitutional standard, it applied that standard in an unreasonable manner to the facts of a particular case. *See Murphy v. Ohio*, 551 F.3d 485, 494 (6th Cir. 2009) *(*quoting *Williams*, 529 U.S. at 407-408). The Supreme Court has made clear that an incorrect application of federal law is different from an unreasonable application of federal law, and it is only the latter that suffices under AEDPA. *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). In undertaking review under § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this court." *Harrington*, 131 S.Ct. at 786.

B.

As the state courts recognized in this case, the applicable Supreme Court precedent setting forth the standards by which to assess Sheehan's claim of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must satisfy two prongs to establish that he received ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient," i.e. that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Second, the defendant is required to show that he was prejudiced by counsel's deficiency. *Strickland*, 466 U.S. at 687, 693. In *Strickland*, the Supreme Court stated that a showing of prejudice in the context of a trial requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Subsequently, in *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court applied the *Strickland* standard in the context of a guilty plea. The Supreme Court affirmed that the two-prong *Strickland* standard applies to challenges to guilty pleas based on ineffective assistance of counsel, and held that in such a context the prejudice prong requires a defendant to show that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. However, the Supreme Court noted that in many guilty plea cases, the assessment of the prejudice prong will require an examination of the likelihood of success at a trial. *Id.* at 59.

"Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington*, 131 S.Ct. at 788. When combined with the deferential standard under § 2254(d)(1), habeas review of an ineffective assistance of counsel claim determined by a state court is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see Harrington*, 131 S.Ct. at 788. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S.Ct. at 788.

C.

Here, the decisions of the Kentucky trial court and Court of Appeals rejecting Sheehan's ineffective assistance of counsel claim were not contrary to clearly established Supreme Court holdings. First, there is no Supreme Court case with "materially indistinguishable" facts. The Supreme Court has never confronted a case where a trial counsel declined to consult an expert regarding an anabolic steroid rage defense. Further, it is clear that the state courts applied the correct legal standards, inasmuch as they correctly identified as applicable the two-prong analysis of the *Strickland* standard and then analyzed the case using that standard.

Nor were the Kentucky state court decisions unreasonable applications of clearly established law, as determined by the Supreme Court. The trial court first found that Sheehan had not overcome the presumption that Seadler's representation fell within the "wide range of reasonable professional assistance." That court rejected the notion that Seadler acted unreasonably by failing to consult an expert, noting that Seadler had determined that doing so would be at best unnecessary and possibly harmful. Further, the court noted that Seadler had frequently communicated with Sheehan, and she feared that an expert evaluation of him would

lead to the conclusion that he was suffering not from "roid rage," but from another dysfunction that would cast aspersions on his character. Seadler was also worried that the presentation of a "roid rage" defense via expert testimony would lead to competing evidence of Sheehan's mental state. Seadler had developed a plan for Sheehan to otherwise "set the table for a jury instruction on Assault Under Extreme Emotional Disturbance," even though, in her opinion, a "roid rage" defense was "risky and could backfire," and could potentially result in more prior bad acts that had not yet been noticed by the prosecution. The court summarized the issues thusly:

> Had Mr. Sheehan not committed other acts a jury could perceive as escalating domestic violence over a lengthy period of time; had Mr. Sheehan's approach to a 'roid rage defense not struck Ms. Seadler as disingenuous; and had Mr. Sheehan not displayed pre- and post-arrest behavior that could lead a reasonable person to conclude he was aggressive and violent when not abusing steroids, Ms. Seadler's decision not to investigate a full blown 'roid rage defense may have been unreasonable. Likewise, had Ms. Seadler neglected to develop a defense based upon Mr. Sheehan's steroid abuse, her representation may have been deficient. However, it is apparent that she made a reasonable strategic decision to pursue the defense, she simply chose to avoid the approaches to doing so now advocated by Mr. Sheehan.

(internal footnotes omitted). The court also stated that it believed, even after hearing Dr. Pope's testimony, that a "roid rage" defense was an outside shot no matter how it was conducted. As noted above, the Kentucky Court of Appeals agreed that Sheehan had not shown that Seadler's performance was deficient.

The trial court also rejected the notion that Sheehan had shown prejudice. The court stated that "[w]hen viewing the case as a whole, a diminished capacity defense based upon steroid abuse was a long shot that had a very real potential of causing more harm than good no matter how it was presented." In that vein, the court stated that in order for Sheehan to secure a lesser sentence than he received via his guilty plea, a jury would have had to find that Sheehan's

behavior in shooting Crystal was the result of an extreme emotional disturbance, which was not something an expert could conclusively determine, rather than simply another of escalating acts of violence by an individual who displayed aggressive behavior even when he was not on steroids. The court noted that the prosecution had evidence of a multitude of prior bad acts leading up to the assault and that the prosecution would likely have been able to present competing expert opinion about Sheehan's mental state and "roid rage" defense. The court further stated that Sheehan had made numerous attempts to negotiate a more lenient plea agreement based on information he had to offer the Commonwealth, not because of a diminished mental capacity defense. Accordingly, the state trial court found that there was no reasonable probability that Sheehan would have gone to trial if only Seadler had conducted a more thorough investigation of his "roid rage" defense.

As the Magistrate Judge found in his report and recommendation, the determination by the Kentucky courts that Seadler provided effective assistance of counsel was reasonable. Seadler's decisions were motivated by reasonable concerns about presenting a "roid rage" defense to a jury. There were many reasons to be dubious of such a defense's effectiveness, particularly given the facts of Sheehan's case. Initially, Seadler had reason to doubt that a jury would have looked well upon a defense to serious charges of attempted murder and assault I premised upon the voluntary ingestion of illegal drugs. Simply put, such a defense to those violent crimes hardly paints Sheehan in a sympathetic light.

Moreover, as Seadler was aware, Sheehan had a long history of domestic abuse, including abusive actions and threats toward Crystal on a regular basis. Sheehan also had unrelated convictions for violating an emergency protective order in 1997 and for stalking in

1998, both either before or at the beginning of the time he claims he began using steroids. Further, while incarcerated and awaiting trial, Sheehan made several recorded phone calls threatening Crystal, her mother, and her sister, including statements that he would pull out their teeth, kill them, and "feed them to the hogs." Sheehan's convictions prior to the time when he could possibly have been said to have been in a "roid rage," as well as his continuing threatening behavior even while incarcerated, would have prevented Seadler from persuasively arguing that his numerous attacks on Crystal were related solely to his steroid use, rather than due to his abusive nature.

Not only was it reasonable for Seadler to be doubtful about the effectiveness of a "roid rage" defense given the evidence of Sheehan's abusive nature, Seadler was also reasonable in believing that requesting an expert psychiatric evaluation of Sheehan would not have been beneficial. As Seadler stated on the stand, providing expert testimony as to Sheehan's psychiatric state would only have required notice to the prosecution, and would have thus allowed the prosecution to obtain its own expert to opine on Sheehan's mental state. There is little doubt that the prosecution's expert would have had different conclusions from those of Sheehan's expert, including, perhaps, that Sheehan had an abusive personality or narcissism. Further, Seadler realized that providing the requisite notice to the prosecution concerning the defense's intention to adduce expert testimony only would have given the prosecution more time to gather evidence of prior bad acts, including those that had not previously been noticed to the defense, which Seadler reasonably anticipated would be admissible to rebut a "roid rage" defense.

In light of Seadler's well-taken concerns about presenting a "roid rage" defense–in particular one based on an expert psychiatric evaluation of Sheehan–Sheehan has not

- 11 -

demonstrated that Seadler's representation was deficient. Accordingly, even under *de novo* review, this court would deny Sheehan's claim for failure to satisfy the first prong of *Strickland*. It certainly cannot be said, then, that the Kentucky courts were unreasonable in rejecting Sheehan's claim on that basis.

Nor was it unreasonable for the state trial court to find that Sheehan was not prejudiced. As explained above, a "roid rage" defense was a long-shot at best, and Sheehan faced a potential life sentence if convicted of the top charge after trial. Further, Seadler explained in her hearing testimony that throughout her representation of Sheehan, they disagreed about many things, but how to present a "roid rage" defense at trial was not one of them. Instead, Sheehan's primary concern while Seadler represented him was obtaining a better plea offer by providing information to the prosecution. When Sheehan mentioned his use of steroids to Seadler during their conversations, she felt he did so as braggadocio, not to emphasize its usefulness for mitigating his actions. In short, in light of Sheehan's lack of focus on the steroid defense prior to trial and the potential for a far greater sentence if he proceeded to trial, it was not unreasonable for the state court to find that Sheehan had not met his burden of showing that additional investigation of a steroid defense by Seadler would have resulted in him deciding to go to trial rather than plead guilty. For that reason, too, Sheehan's ineffective assistance of counsel claim must be dismissed.

D.

Finally, in his objections and supplemental objections, Sheehan makes two arguments that were not addressed by the state courts or by the Magistrate Judge. First, Sheehan states that Seadler provided him erroneous information regarding his parole eligibility by telling him and

his family on the morning of trial that if Sheehan proceeded to trial, "the jury is going to give him a life sentence and . . . he will never make parole" (DN 40 at 6; *see* DN 43). Second, in his objections and supplemental objections, Sheehan argues that Seadler operated under a conflict of interest, namely that Seadler was herself a victim of domestic violence (DN 40 at 9; DN 42). Sheehan states that Seadler told him that, as a domestic violence victim, she could relate to Crystal (DN 40 at 9; DN 42 at 1-2). Sheehan also submitted with his supplemental objection copies of domestic violence emergency protective orders entered on behalf of Seadler in 2001 and 2002 (DN 42).

However, this court will not consider Sheehan's claims concerning Seadler's supposed provision of misinformation concerning parole and her alleged conflict of interest.[2] Sheehan made no mention of either of those claims in his habeas petition. Objections to a Magistrate Judge's report and recommendation are not the proper forum for a habeas petitioner to amend his petition to raise new claims. A habeas petition may be amended "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under Federal Rule of Civil Procedure 15(a), once the time to freely amend a pleading has passed, a party may amend its pleading only

---

[2] The court notes that Sheehan may have failed to exhaust these claims, but the parties have not supplied the court with sufficient documentation for the court to make that determination. Sheehan states that he raised the conflict of interest claim in his initial state court post-conviction motion, although this court does not have a complete copy of that initial motion to verify that he did so. Sheehan does not, however, state that he raised these claims before the Kentucky Court of Appeals or the Kentucky Supreme Court. The exhaustion requirement of § 2254(b)(1)(A) requires that a habeas petitioner present his claim to the highest state court eligible to review his claim, and a failure to do so generally precludes a federal court from rendering a decision on such a claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). But, because this court does not have copies of Sheehan's filings in the Kentucky Court of Appeals and the Kentucky Supreme Court, it cannot conclude that he failed to exhaust the arguments he raises in his objections and supplemental objections.

upon leave of the court. Thus, for Sheehan to amend his habeas petition to include new claims, he should have sought leave of the court to add those claims to his petition.[3]

## IV.

The Magistrate Judge also recommended that this court decline to issue a certificate of appealability. Under 28 U.S.C. § 2253(c), a habeas petitioner may obtain a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right." For a claim dismissed on the merits, a habeas petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For those claims dismissed on procedural grounds, a petition must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

---

[3] It appears that even if Sheehan sought leave to amend at this point, his new claims would be time-barred under AEDPA. AEDPA has a one-year statute of limitations, which begins to run when a judgment of conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The trial court entered Sheehan's judgment of conviction on July 20, 2004. Sheehan did not directly appeal that judgment of conviction; thus, the conviction became final on the date when his right to seek direct review expired. *Id.* While Respondent has argued that Sheehan has no right to directly appeal from a guilty plea, it is enough for our purposes to note that Kentucky law provides 30 days to seek direct review of a judgment of conviction. RCr 12.04(3). Thus, his conviction became final, at the latest, on August 19, 2004. The statute of limitations was tolled during the time period between the filing of Sheehan's post-conviction motion on July 20, 2005 and the denial of discretionary review by the Kentucky Supreme Court on December 14, 2011. 28 U.S.C. § 2244(d)(2). As of the latter date, Sheehan had 35 days, or until January 18, 2012, to file his petition. While he did file a timely petition, any claims not raised in the timely petition are now untimely unless they relate back to the original claim by sharing a "common core of operative facts" with that claim. *See Mayle v. Felix*, 545 U.S. 644, 659, 664 (2005). The original claim raised in Sheehan's petition concerns Seadler's allegedly insufficient investigation of a "roid rage" defense. The new claims raised in his objections concern Seadler's alleged conflict of interest due to her status as a victim of domestic violence and her supposed provision of misinformation concerning Sheehan's parole eligibility. Because the new claims do not share a common core of operative of operative facts with the original claim, theywould be untimely, and any request for leave to amend made now would be denied as futile.

As the Magistrate Judge noted, reasonable jurists could not find that the opinions of the Kentucky courts were contrary to, or unreasonable applications of, clearly established precedent of the United States Supreme Court. Nor could reasonable jurists debate the correctness of this court's decision not to address the claims Sheehan did not raise in his habeas petition. Thus, the court will decline to issue a certificate of appealability.

## V.

In conclusion, the motion of Respondent to dismiss the habeas petition will be granted and the petition will be dismissed with prejudice. Petitioner will be denied a certificate of appealability. A separate order will be entered in accordance with this opinion.

September 7, 2012

Charles R. Simpson III, Judge
United States District Court